1   CRAIG H. MISSAKIAN (CABN 125202)
    United States Attorney
2
    MARTHA BOERSCH (CABN 126569)
3   Chief, Criminal Division

4   JONATHAN U. LEE (CABN 148792)
    WENDY M. GARBERS (CABN 213208)
5   Assistant United States Attorneys

6        450 Golden Gate Avenue, Box 36055
         San Francisco, California 94102-3495
7        Telephone: (415) 436-7200
         FAX: (415) 436-7234
8        Jonathan.Lee@usdoj.gov

9   Attorneys for United States of America

10                      UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                            OAKLAND DIVISION

13
    UNITED STATES OF AMERICA,              )   NO. 4:23-CR-00191-AMO-8
14                                         )
                 Plaintiff,                )   **SENTENCING MEMORANDUM OF THE**
15                                         )   **UNITED STATES**
          v.                               )
16                                         )   Date: October 20, 2025
    DARRIN HUTCHINSON, ET AL,              )   Time: 2:30 p.m.
17                                         )
                 Defendants.               )
18                                         )
                                           )
19  _____)

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     OFFENSE AND RELATED CONDUCT ............................................................1

A.      The Charges ...........................................................................................................1

B.      Offense Conduct ....................................................................................................2

    1.      November 12, 2022 Robbery ....................................................................2

    2.      Uncharged Conduct - C.R.A.F.T. robbery on August 6, 2022 ...............5

    3.      Conspiracy Event - Burglary of Audi Oakland on November 24, 2022.............6

C.      Ghost Town gang membership ...............................................................................6

III.    CRIMINAL HISTORY .......................................................................................10

IV.     VICTIM IMPACT AND RESTITUTION..........................................................11

A.      Victims .................................................................................................................11

    1.      Coin store robbery .................................................................................11

    2.      Jewelry store robbery ............................................................................12

    3.      Marijuana business robbery ..................................................................13

B.      Restitution ............................................................................................................14

    1.      Coin store robbery .................................................................................14

    2.      Jewelry store robbery ............................................................................14

    3.      Marijuana business robbery ..................................................................14

V.      SENTENCING GUIDELINES CALCULATIONS ...........................................14

VI.     APPLICABLE LAW ...........................................................................................15

A.      Sentencing Framework ........................................................................................15

B.      Conspiracy, Aiding and Abetting, and Robbery Affecting Interstate Commerce Framework............................................................................................................15

VII.    SENTENCING RECOMMENDATION .............................................................16

A.      Nature of the offense ...........................................................................................16

B.      Need for deterrence ..............................................................................................17

C.      Need to promote respect for the law ...................................................................18

D.      History and characteristics of the defendant .......................................................19

i

E.      The need to avoid unwarranted disparities in sentencing ................................................19

VIII.   CONCLUSION................................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ortiz-Magana v. Mukasey*,
    542 F.3d 653 (9th Cir. 2008) ................................................................. 16

*Young v. United States*,
    22 F.4th 1115 (9th Cir. 2022) ............................................................... 15

*United States v. Carty*,
    520 F.3d 984 (9th Cir. 2008) ................................................................. 15

*United States v. Dominguez*,
    954 F.3d 1251 (9th Cir. 2020), *cert. granted, judgment vacated*, 142 S. Ct. 2857 (2022), *and reinstated in part by* 48 F.4th 1040 (9th Cir. 2022)............................................. 15

*United States v. Henry*,
    984 F.3d 1343 (9th Cir.), *cert. denied*, —— U.S. ——, 142 S. Ct. 376, 211 L.Ed.2d 200 (2021)........ 15

*United States v. Jones*,
    678 F.2d 102 (9th Cir. 1982) ................................................................. 16

*United States v. Joseph*,
    No. 19-169767, 2022 WL 850036 (9th Cir. Mar. 22, 2022)................................. 15

*United States v. Knight*,
    No. 21-10197, 2023 WL 34698 (9th Cir. Jan. 4, 2023), *cert. denied*, 143 S. Ct. 2478, 216 L. Ed. 2d 441 (2023)........................................................................ 15

*United States v. Sannicandro*,
    434 F.2d 321 (9th Cir. 1970) ................................................................. 16

## Statutes

18 U.S.C. 922(g)(1) ................................................................................. 11

18 U.S.C. § 924(c)(3)(A) .......................................................................... 15

18 U.S.C. § 1951 ................................................................................. 1, 2

18 U.S.C. § 3553(a) ............................................................................... 15

18 U.S.C. § 3553(a)(2)............................................................................ 15

California Penal Code 245(a)(1)................................................................. 10

California Penal Code 245(a)(2)................................................................. 10

U.S.C. § 3553(a)(2)........................................................................................................................... 15

## I.    INTRODUCTION

A few months into his term of supervised release, Darrin Hutchinson joined a conspiracy of other Ghost Town gang members who committed a violent, takeover robbery of a jewelry store.  Mr. Hutchinson's conduct in this case has echoes of his three previous felony convictions as an adult.  In each of his cases, Mr. Hutchinson began a term of supervision or parole after a lengthy prison sentence, and within a short time, he committed a new offense, typically one involving violence.  The jewelry store robbery was very violent with victims being held at gunpoint or running away while screaming in terror and store customers including a young child suddenly accosted at gunpoint.  The sentence in this case needs to address this repeating pattern and provide the deterrence that has to this point failed to reach Mr. Hutchinson.  Accordingly, the United States requests a sentence of 76 months in prison.  This reflects the seriousness of the conduct, the need for deterrence, the impact on victims and the community, and the need to hold this defendant accountable for his conduct, which occurred while on supervised release for a prior federal conviction.  While the recommended sentence falls short of the previous longest sentence Mr. Hutchinson has received, it meets the needs of sentencing, including deterrence.  As will be discussed in more detail below, the recommended sentence accounts for the aggravating and mitigating sentencing factors.

## II.    OFFENSE AND RELATED CONDUCT

### A.    The Charges

Defendant Darrin Hutchinson plead guilty to the two counts against him in the Second Superseding Indictment.  ECF 301.

| Count No. | Charged Offense | Defendants Charged |
|---|---|---|
| One | Conspiracy to Commit Robbery Affecting Interstate Commerce, March 18, 2022, through January 26, 2023, in violation of 18 U.S.C. § 1951 | Jenkins<br>Barnett<br>Rabon<br>Smith-Stewart<br>Burrell<br>Garcia<br>Garnett<br>**Hutchinson**<br>Joseph |
| Two | Hobbs Act Robbery and Aiding and Abetting Hobbs Act Robbery on March 18, 2022 (Robert Johnson | Jenkins<br>Barnett |

1

| | | |
|---|---|---|
| | Stamp & Coin Company, San Francisco) in violation of 18 U.S.C. § 1951 | Garnett<br>Joseph |
| Three | Hobbs Act Robbery and Aiding and Abetting Hobbs Act Robbery on November 12, 2022 (H Bee Jewelry Store, San Pablo) in violation of 18 U.S.C. § 1951 | Jenkins<br>Barnett<br>Rabon<br>Garcia<br>**Hutchinson** |
| Four | Hobbs Act Robbery and Aiding and Abetting Hobbs Act Robbery on December 24, 2022 (Joyus Wellness, Oakland) in violation of 18 U.S.C. § 1951 | Jenkins<br>Barnett<br>Rabon<br>Smith-Stewart<br>Burrell<br>Garcia<br>Garnett |

**B.    Offense Conduct**

1.    November 12, 2022 Robbery

The PSR describes this robbery at paragraphs 16-24.  In his plea agreement, Hutchinson admitted his involvement in the robbery.

> Beginning no later than November 12, 2022, I joined a conspiracy to commit a robbery of a business which was selected because the business is commonly known to have cash or high-valued products and inventory. The object of the conspiracy was to commit robbery of the business for personal gain.  I, along with others, robbed the H Bee Jewelry Store ("H Bee Jewelry"), located at 2415 San Pablo Dam Rd. #401, in San Pablo, California on or about November 12, 2022.  I used a phone to communicate about the planning and commission of the robbery.  In this robbery, firearms were possessed and brandished to threaten and gain control over those individuals inside the business.  I along with others obtained valuable property and currency from the victim business including stolen property valued at more than $95,000 from the H Bee Jewelry Store.

> Prior to the robbery, license plates were stolen to be used on getaway cars. I communicated with others on the phone and met in Oakland before the robbery.  At approximately 4:00 p.m. on November 12, 2022, I and others arrived at H Bee Jewelry in two getaway cars, each bearing a stolen license plate.  I and others entered H Bee Jewelry, wearing clothing to disguise our identities, while others waited outside in the getaway cars. Firearms were brandished by others towards employees inside the store where bags of jewelry valued at more than $95,000 were stolen. Immediately after committing the robbery, I reentered one of the two getaway cars waiting outside and travelled back to Oakland.

> I understand that H Bee Jewelry was operating in interstate commerce.  By committing the robbery of H Bee, I engaged in conduct that interfered with interstate commerce.

2

1  At the time of the conduct described in this paragraph, I was serving a
   term of supervised release in Case No. CR 18-0110 AMO and my
2  conditions of supervision included a prohibition on new criminal conduct.

3  The PSR also discusses Hutchinson's admissions at PSR ¶ 31-34. In summary, Hutchinson admitted that

4  he went inside H Bee to carry out the robbery.  He admitted that firearms "were brandished" to threaten

5  and gain control over the store's occupants and that bags of jewelry valued at more than $95,000 was

6  taken from the business.  He also admitted that he used his cell phone to communicate with the others

7  who participated in the robbery, that they stole license plates to use on the two getaway cars, and that he

8  reentered the getaway car and returned to Oakland immediately after the robbery.  He further admitted

9  that he was on supervised release at the time that he committed this robbery.

10      The phone location evidence shows that Hutchinson's location followed a similar pattern to the

11  other indicted suspect's phones, including Rabon, Garcia, Barnett and Jenkins - before, during, and after

12  the robbery.  Their phone location moved from Garcia's residence in Oakland to H Bee in San Pablo and

13  then back to Garcia's residence in Oakland.  Jenkins's more precise ankle monitor data placed him on

14  site at Garcia's residence before and after the robbery.  The combination of the phone location of

15  multiple defendants and Jenkins's ankle monitor data shows that Garcia's residence was a key

16  operational location in the H Bee robbery, providing a meeting place before and after the robbery.

17      The government provided security video from H Bee.  In general, the video shows the two

18  vehicles with stolen license plates approaching the rear door, the execution of the robbery inside the

19  business, and the co-conspirators departing in the two vehicles.



The robbers used violence against the victims by holding or restraining them at gunpoint.  No fewer than five robbers entered, and they first encountered an adult male victim at the rear door.  They placed a gun to his chest, turned him around, and roughly pushed him to the floor, where one of the robbers continued to straddle or sit on the victim, preventing him from leaving.



The robbers then encountered a second adult male who was exiting the toilet.  The robber sitting atop the first victim was in close proximity to the second victim as the door opened and pointed the firearm at the second victim, holding him in the toilet for the duration of the robbery.



Another robber took a position near the counter and extended his arm to point a second firearm at the persons in the front counter area of the premises.



One of those near the front counter was the adult, elderly female who was crying out in fear. There were three others in the area, including two adults and a young child. This robber continued to point the firearm in their collective direction.

### 2. Uncharged Conduct - C.R.A.F.T. robbery on August 6, 2022

This uncharged conduct predated the H Bee robbery by three months. On August 6, 2022, from approximately 2:30 – 5:30 a.m., multiple members of the conspiracy broke into the C.R.A.F.T. marijuana dispensary in Oakland. The victim reported loss of inventory of cannabis products with a value of at least $100,000. The owner of the dispensary came to the location and was accosted by one of the suspects who showed a firearm, which caused the owner to flee. Hutchinson's phone location evidence, relating to a phone number he disclosed to U.S. Probation as his from October 2021 to his arrest in 2024, shows he was on the scene of this burglary. The phone location evidence shows that Hutchinson was at Garcia's Oakland address before the burglary at approximately 12:30 a.m., on scene at the C.R.A.F.T. location at approximately 4:12 a.m., and then back at Garcia's from approximately 6:22 a.m. Hutchinson's phone location evidence shows a similar pattern of movement to that of co-defendants Jakari Jenkins, Lester Garnett, and Danny Garcia. Garnett and Jenkins's phones also contained photographic evidence of stolen inventory from C.R.A.F.T. Thus, the government contends that Hutchinson joined the conspiracy by August 2022.

3.    Conspiracy Event - Burglary of Audi Oakland on November 24, 2022

Shortly after the H Bee robbery, the co-conspirators burglarized the Audi Oakland dealership.

On November 21, 2022, co-defendant Smith-Stewart purchased an Audi at Audi Oakland near the Coliseum using a false identity and supporting documents. She gave $9,500 in cash as a down payment for the Audi. Aramiya Burrell was with her. When the salesperson put the cash in the safe, Burrell expressed interest in the safe and at one point tried to pick it up.

Three days later, on November 24, 2022, at around 2:00 a.m. (Thanksgiving morning), the Audi dealership was burglarized and the safe was stolen. Cell phone data records show that Mr. Hutchinson along with co-conspirators/fellow Ghost Town gang members Jenkins, Barnett, Garcia, and others were present at the Audi Oakland premises at the time of the burglary. The phone records show that the group met at or near Garcia's residence in Oakland before and after the burglary. Jenkins's ankle monitor data shows he was at Garcia's Oakland address from approximately 12:30 a.m. to 1:40 a.m., then at Audi Oakland from 1:59 a.m. to 2:10 a.m., then at Garcia's address from 2:16 a.m. to 2:30 a.m., and then at Audi Oakland from 2:37 a.m. to 2:47 a.m., before returning to Garcia's address from 2:54 a.m. to 3:06 a.m. T

he combination of phone location and ankle monitor data makes clear the vital role Garcia's residence in Oakland played in this burglary, and how Hutchinson and the others benefitted from that operational base, making the conspiracy more effective, efficient, and hard to stop.

### C.    Ghost Town gang membership

Mr. Hutchinson is a longtime member of Ghost Town gang.

First, in his criminal history, there are additional references to his association with the Ghost Town gang. At the time of his 2010 arrest in Las Vegas, Hutchinson was with four known Ghost Town gang members. PSR ¶56. When he was sentenced in this Court in 2018, Judge Gonzalez Rogers imposed a supervised release condition that he not associate with any member of the Ghost Town gang or engage in any gang activity. PSR ¶57.

Second, Santa Rita Jail classification records document that Hutchinson has identified himself as Ghost Town, and the jail took photos of his tattoos associated to Ghost Town. Exhibit P.



Third, the government produced in discovery a Youtube video of a birthday party on December 22, 2022.  The video, "Miya Surprise Party," was posted approximately five weeks after the H Bee robbery and two days before the Joyus robbery.  Exhibit Q.  The video shows that Darrin Hutchinson and at least six co-defendants were present at the party (Jenkins, Barnett, Rabon, Smith-Stewart, Garnett, Garcia).  Hutchinson is wearing a pendant and other jewelry stolen from H Bee; he is shown with stolen jewelry and with others displaying stolen jewelry; and he displays large sums of cash during the party.  There are also hand signs associated with Ghost Town displayed on the video, and one individual standing next to Jakari Jenkins explains on camera that Ghost Town's operations are year-round, not seasonal.  The link is here:

https://www.youtube.com/watch?app=desktop&v=n0MOJIYM1JU&edufilter=NULL



Hutchinson, right, with Aramiya Burrell.



Hutchinson, second from right, with Jakari Jenkins and Demarco Barnett.

Fourth, Hutchinson posted on his Instagram account images associated with the robberies. He posted a photo of himself (left) with co-defendant Rabon at the December 22, 2022 party.

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15  He also posted a stolen Cartier bracelet with captions suggesting he was selling it.

16
17
18
19
20
21
22
23
24
25



26  This photo, posted to Hutchinson's Instagram account dada_winnin on November 29, 2022, had the

27  caption, "Tryna run up a billion until my income pop, yeah." Mr. Hutchinson continued efforts to sell

28  jewelry stolen from H Bee beyond the date of the Joyus robbery, into January 2023. An example of this

9

are the January 20, 2023 text messages shown below in which a phone number associated with Hutchinson discussed selling proceeds of a robbery and going to jail.  The texts were on the cell phone of another Ghost Town gang member seized in April 2023.



Exhibit R.  For the most part, that activity ceased in late January 2023 when law enforcement executed search warrants at residences of several co-defendants.

### III.    CRIMINAL HISTORY

Mr. Hutchinson is 38 years old and has three felony convictions as an adult.  His criminal history score is 10, which places him in criminal history category V.  Mr. Hutchinson's history includes lengthy prison sentences in his three cases followed by new criminal conduct shortly after his release from custody and while on some form of supervision.

First, Hutchinson was convicted in 2007 at age 19 of Assault with Great Bodily Injury Likely, California Penal Code 245(a)(1), arising from a violent attack on a then-fellow inmate.  PSR ¶ 55.  The Court imposed a four-year prison sentence.  Mr. Hutchinson was paroled on July 3, 2009.

Second, fewer than eight months after being paroled, Mr. Hutchinson was involved in a shooting in Oakland, for which he was convicted of Assault with Firearm on Person in violation of Penal Code 245(a)(2).  PSR ¶ 56.  The victim suffered nine gunshot wounds.  Officers attempted to locate and arrest Mr. Hutchinson as a parolee at large, but when officers attempted to stop him, Mr. Hutchinson fled and

10

1    evaded arrest.  On February 1, 2010, officers arrested Mr. Hutchinson in Las Vegas.  He was in the

2    company of four males who were Ghost Town gang members.  Mr. Hutchinson received a prison

3    sentence of eight years.  He was paroled on July 13, 2017.

4    Third, fewer than eight months after his parole, Mr. Hutchinson was detained by the U.S.

5    Marshals Fugitive Task Force in San Leandro.  PSR ¶ 57.  Officers searched a vehicle belonging to

6    Hutchinson and located a Glock 23 .40 caliber semi-automatic firearm.  Judge Gonzalez Rogers imposed

7    a 51-month sentence for Mr. Hutchinson's violation of 18 U.S.C. 922(g)(1) – Felon in Possession of

8    Firearm and Ammunition, to be followed by a three-year term of supervised release.  The supervised

9    release conditions included a special condition stating, "You must not knowingly participate in gang

10   activity, must not knowingly associated with any member of the Ghost Town gang, and must not wear

11   the clothing, colors, or insignia of the Ghost Town gang."  The term of supervised release began on

12   October 27, 2021, approximately one year before the H Bee robbery.

13   In sum, Mr. Hutchinson appears to have spent approximately two and a half years out of custody

14   since June 14, 2007, the date of his first adult felony conviction.

## IV.    VICTIM IMPACT AND RESTITUTION

### A.    Victims

17   The victims in this case suffered physical and psychological injuries at the hands of Mr.

18   Hutchinson and his co-conspirators.  The government will recount the victims' experience in summary.

#### 1.    Coin store robbery

20   There were two victims present during the March 2022 robbery of the coin store in San

21   Francisco.  K.B., an immigrant from Europe who was in his early 70s at the time, was present with his

22   adult son E.B., who was in his early forties.  K.B., whose description of the robbery was produced in

23   discovery, stated that three suspects forced their way into the business by pushing open the front door.

24   All three were armed with firearms, wearing masks and gloves.  One suspect forced K.B. to sit in a

25   chair, with the other two forced E.B. to the ground, tied him up, and hit him on the head.  K.B. said the

26   suspect who stayed with him pointed a firearm at his head for the entirety of the robbery, telling K.B.

27   that he was in charge.  His voice did not sound nervous or scared to K.B.  He then forced K.B. into the

28   adjacent room where the other two had his son on the ground.  The suspect told K.B. that if he wanted

for him and his son to live, he will open the safe. K.B. opened the one safe that was still locked. The suspects then took cash, coins, and watches. One suspect told the other that the group only had 3-5 minutes before they needed to leave. Before leaving the coin store, the suspects took K.B. and E.B.'s wallets and cell phones. One of the suspects pulled K.B.'s license out of his wallet, showed it to him, and told him that they know where the two victims live and warned them not to do anything stupid. E.B. received treatment for his injuries at S.F. General Hospital. K.B. went to Kaiser Hospital and received treatment for one week due to the injuries he received in the robbery.

The government did not charge Mr. Hutchinson with this robbery, but he joined the conspiracy and knew it used firearms and violence to overwhelm small businesses with valuable inventory. The facts described here are supported by Exhibits A-C.

### 2. Jewelry store robbery

The victims inside the jewelry store included H.S. (the owner), Y.S. (his elderly mother), and two employees I.C. and J.C., as well as customers who have not been identified. Surveillance footage shows this robbery in detail.

An exterior video (Exhibit D, produced at US-00913) shows three robbers exiting the vehicle closest to the door while still moving and the front passenger holds an adult male victim at gunpoint at 1m:03s).[1] By 1:08, the three are inside and the second vehicle pulls up from the opposing direction. By 1:19, five robbers are inside including two from the second vehicle. Robbers are depicted putting trays of stolen merchandise into the two vehicles at 1:35, 1:52, 2:06, and 2:30. By 2:34, the two vehicles speed away in different directions. The entire robbery took 1 minute 31 seconds.

An interior video (Exhibit F, US-00860) shows a robber with a gun pointed at the first adult male encountered and a right hand on his arm at 0:09. The same robber points the gun in the general direction of the adult male's head while a second robber passes by (0:10) and the second robber then uses the gun and their hands to push the adult male into the premises and down to the floor (0:12). The robber shouts "don't fucking move" and "stay down" while holding the adult male on the floor (0:20) and yells "they ran out the front" as other robbers enter and begin to take the inventory merchandise (0:23). While the

---

[1] All times are approximate and in minute:second format relating to the running time counter for each video.

robber holds the adult male on the floor, an adjacent door from the toilet opens and a second adult male encounters the robber, who points the firearm at the second male (0:26).

An interior video (Exhibit E, US-00861) shows a gunman holding two males in place including one on the floor underneath the gunman and a robber wearing gray pointing a firearm at the front area of the store (0:24). At 1:23, one of the robbers calls out "we gone" and all robbers exit; the robber in gray grabs jewelry from the safe.

An interior video (Exhibit G, US-00862) shows the armed robber kneeling on the adult male victim to hold him down on the floor (0:25), the armed robber in gray pointing his firearm at the front of the store (1:14), the robbers leave (1:14) with the initial gunman the last to leave, and the female is heard crying out until 1:54.

An interior video (Exhibit H, US-00863) shows four people standing at a counter toward the front of the store. Three of the four run toward the front, with the child the last to run (0:04), and the female victim is shown running to the front area (0:11) and "they ran out the front" is heard (0:15).

In less than two minutes, the robbers ransack the store of approximately $300,000-$500,000 worth of jewelry from several different drawers, containers, and safes, and then fled in two getaway cars, and they left the victims traumatized by the experience.

            3.    Marijuana business robbery

There was one individual present for this robbery, A.P., who described how the robbers confronted him as he was leaving the Joyus premises. A.P. followed his standard practice for leaving Joyus, which was to call a coworker J.A., who had access to the exterior video cameras, so he could give A.P. the "okay" to leave. A.P. went to his vehicle and started the engine when one of the robbers appeared with a firearm pointed at A.P. Other suspects also appeared and they got A.P. out of the vehicle, and then they took his driver's license, debit card, cash and cell phone. The suspects took A.P. back inside the business. They led him by the back of his neck. They asked him where the money was repeatedly. A.P. directed the suspects to the vault. The suspects had A.P. lay down on the ground, face down, and one of the suspects held him down with a foot. Later, A.P. got to his feet and the suspects took him to the immature marijuana plants area. He told the suspects the business did not have mature plants. The suspects escalated their demands and tone. One of them struck A.P. on the head with the

back of a gun.  The suspects acted with a sense of urgency.  They wore masks and hoods.  After they took A.P. to an office area, kicking in the door to gain entry, A.P. heard them yelling about the police and fleeing.  A.P. stayed on the ground until all the suspects left Joyus.  There were unauthorized charges on his debit card in the following days, but his bank reimbursed him for those charges.  He bought a new cell phone.  He received treatment for his bleeding cut on his head, and he felt a bump in that area in the following days.  The government did not charge Mr. Hutchinson with this robbery, but he was a member of the conspiracy, present at the Miya Surprise Party a few days before the robbery and continuing efforts to sell stolen jewelry into 2023.  The facts described above are supported by Exhibits K-N.

**B.    Restitution**

The government requests that the Court order restitution for the victims in the following amounts, payable by Mr. Hutchinson, jointly and severally with the other defendants who in subsequent sentencing hearings are also culpable for these robberies.  Neither Mr. Hutchinson nor any other defendant in this case has made any payment toward restitution, nor have they returned any of the stolen coins or jewelry.  The loss amounts below are lower than the value of what was stolen by these defendants.

1.    Coin store robbery

The victim estimates losses of approximately $300,000.  The government produced discovery documenting stolen coins and other inventory valued at $150,338.

2.    Jewelry store robbery

The jewelry store estimated the loss at between $300,000 and $500,000.  The government produced discovery documenting losses of approximately $159,400.

3.    Marijuana business robbery

The loss amount for this robbery is undetermined.  The quantity of marijuana trimmings had a quantifiable value, but the government has not received a loss estimate or other documentation.

**V.        SENTENCING GUIDELINES CALCULATIONS**

The Total Offense Level of 26.  Using the Criminal History Category V, the advisory sentencing range is 110-137 months.

1    ## VI.    APPLICABLE LAW

2    ### A.    Sentencing Framework

3    The Court should impose a sentence sufficient, but not greater than necessary, to reflect the

4    purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520

5    F.3d 984, 991 (9th Cir. 2008).  The Court should begin the process of determining an appropriate

6    sentence by calculating the correct sentencing range under the Guidelines. *Id*.  After determining the

7    appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive

8    reasonableness in light of the factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991-93.  Under 18

9    U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider

10   these factors applicable to this case, among others: 1) the nature and circumstances of the offense and

11   the history and characteristics of the defendant; 2) the need for the sentence imposed to reflect the

12   seriousness of the offense, to promote respect for the law, and to provide just punishment for the

13   offense; 3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; 4) the

14   need to avoid unwarranted sentence disparities among defendants with similar records who have been

15   found guilty of similar conduct; and 5) the need to provide restitution to any victims of the offense.

16   ### B.    Conspiracy, Aiding and Abetting, and Robbery Affecting Interstate Commerce Framework

17   Violations of Title 18, section 1951, also known as Hobbs Act robbery, are crimes of violence.

18   *See United States v. Knight*, No. 21-10197, 2023 WL 34698, at *2 (9th Cir. Jan. 4, 2023), *cert. denied*,

19   143 S. Ct. 2478, 216 L. Ed. 2d 441 (2023), *citing United States v. Dominguez*, 954 F.3d 1251, 1261 (9th

20   Cir. 2020), *cert. granted, judgment vacated*, 142 S. Ct. 2857 (2022), *and reinstated in part by* 48 F.4th

21   1040 (9th Cir. 2022) ("We reaffirm that Hobbs Act robbery is a crime of violence under 18 U.S.C. §

22   924(c)(3)(A).").  The same is true for the offense of aiding and abetting such a robbery.  *United States v.*

23   *Joseph*, No. 19-169767, 2022 WL 850036, at *1 (9th Cir. Mar. 22, 2022), citing *Young v. United States*,

24   22 F.4th 1115, 1122 (9th Cir. 2022) ("[T]here is no distinction between aiding-and-abetting liability and

25   liability as a principal under federal law.")  An offender who aids and abets another offender if "treated

26   as if they committed the offense as principals." *See United States v. Henry*, 984 F.3d 1343, 1356 (9th

27   Cir.), *cert. denied*, —— U.S. ——, 142 S. Ct. 376, 211 L.Ed.2d 200 (2021) ("Defendants found guilty of

28

armed bank robbery under ... [an] aiding-and-abetting theory are treated as if they committed the offense as principals."); *see also Ortiz-Magana v. Mukasey*, 542 F.3d 653, 659 (9th Cir. 2008) (stating that "aiding and abetting an [offense] is the functional equivalent of personally committing that offense"); *United States v. Jones*, 678 F.2d 102, 104 (9th Cir. 1982) (holding that "any person who aids or abets" a violation of § 2113 "is punishable as a principal"); *United States v. Sannicandro*, 434 F.2d 321, 324 (9th Cir. 1970) ("This circuit is committed to the view that whoever aids or abets the commission of an offense against the United States is punishable as a principal.").

## VII.    SENTENCING RECOMMENDATION

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C.§3553(a), the government respectfully recommends that the defendant be sentenced to 76 months in prison, three years of supervised release, forfeiture, and full restitution in an amount to be determined. Such a sentence would be sufficient, but not greater than necessary, based on the nature of the offense, the need for deterrence, and the history and characteristics of the defendant. The recommended sentence accounts for the aggravating sentencing factors while also balancing the mitigating factor of Mr. Hutchinson's acceptance of responsibility, which occurred relatively quickly after he was charged.

### A.    Nature of the offense

The nature of the offense conduct is extremely serious. Mr. Hutchinson was an active participant in a violent robbery. He joined a conspiracy that he knew used violence to target the victim business because of valuable inventory. His motive was financial gain. The H Bee robbery was a coordinated takeover. The co-conspirators used firearms to gain control of the premises. They pointed the guns at the victim employees, who were placed in fear of their lives by this conduct. The co-conspirators used the guns to restrain and direct individuals inside the businesses to be quiet, to lay down, to move to a location the robbers desired, all through threat of force. Multiple co-conspirators surged inside the rear door. One pointed a firearm at an adult male victim at the rear door, who was forced to the floor with a gun pointed at him. That robber then got on top of the male victim, holding him in place on the floor. An elderly female employee screamed in terror as she retreated toward the front of the store, where two customers waited by the counter, as a co-conspirator pointed a handgun in their direction and yelled at them. A young child was with one of the customers. A male employee opened the door to exit the toilet

near the rear door, only to have a robber point a gun at him.  This was the same robber who straddled the first male victim to hold him down on the floor.  The violence of this case is an aggravating factor.

Likewise, the coordination of the co-conspirators is an aggravating factor.  This was a criminal partnership, and it was an effective one, executing multiple crimes over the course of several months.  First, the manner and execution of the robberies involved advance planning and coordination.  Each robbery targeted stores with cash-reserves or valuable items (marijuana dispensaries or jewelry/coins).  Each was a takeover style robbery with co-conspirators filling pre-planned roles—including who would serve as the getaway driver and who would enter the business.  This made the takeover more efficient and therefore more effective.  Each robbery involved suspects dressed in disguises (relatively generic hoodies and masks) to conceal their identities.  Each robbery involved the threatened use of firearms.  Significantly, each robbery involved coordinated movement with the robbers meeting at or near Defendant Garcia's apartment before and after the robbery.  Second, location records and toll records show a coordination among the suspects before each robbery.  Third, the getaway cars used during each robbery show the group planned the robberies in advance by coordinating their transportation in a way to avoid detection.  In the H Bee jewelry store robbery, both getaway cars had stolen license plates, covering tracks of those involved. Fourth, the cell site data shows the co-conspirators met at similar locations before each of the robberies—evidence that indicates they met to plan their heists in advance.  They met at or very near Garcia's residence in Oakland.  Again, all of the members of the conspiracy benefited from this careful planning and coordination.  The defendant who served as the getaway driver made the rapid takeover and speedy departure possible.  That defendant's contributions made it more likely that another co-conspirator would be emboldened to point a firearm at a victim or strike that victim with the firearm because each co-conspirator knew of the plan to be quick about their business.  Because they operated as a criminal partnership, each member of the conspiracy is culpable for the acts in furtherance of their agreement.  Here, Hutchinson participated in one of the three robberies, and he engaged in conspiratorial acts to ensure the group's success, to include selling stolen property.

### B.  Need for deterrence

The need for deterrence in this case is an aggravating sentencing factor.  Mr. Hutchinson has three prior felony convictions, each involving a lengthy prison sentence.  Shortly after his release from

prison, he reoffended.  His reoffending conduct has typically been during his parole, supervised release or other forms of supervision.  Hutchinson is a longtime member of the Ghost Town criminal gang. Oakland's Department of Violence Prevention has concluded that the Ghost Town gang is among the three groups "responsible for the majority of group-driven violence" in Oakland, including the gun violence that has exploded in recent years.[2]  In sum, his previous prison sentences of 4, 4.25, and 8 years have not deterred Mr. Hutchinson.  Neither has court-ordered supervision.  The recommended sentence will protect the community from Mr. Hutchinson's future offenses.

In addition, the need for general deterrence is high also.  The community has a strong interest in curbing this violent conduct.  According to crime data, robberies involving the use of a firearm increased in Oakland by 50% in 2023, the calendar year following the offense conduct in this case.  Exhibit O. Robbery crews using firearms to overwhelm small businesses is an ongoing concern.  The victims in this case provided vivid descriptions of the fear and terror they experienced at the hands of Mr. Hutchinson and his co-conspirators.  The recommended sentence will signal to like-minded individuals (and to Mr. Hutchinson) that the Court does not tolerate this offense conduct and will impose serious consequences for those proven to have committed similar conduct.

## C.    Need to promote respect for the law

The needs of sentencing in Mr. Hutchinson's case include the need to promote respect for the law.  First, he has a history of committing felony offenses while on supervision.  His 2006 offense occurred when he was on DJJ parole.  In 2010, California suspended his DJJ parole, and in 2012, the state discharged it after he was returned to state prison.  His 2010 offense conduct occurred when he was on state parole.  In 2010, Mr. Hutchinson fled from and evaded officers attempting to arrest him on a petition for parolee at large.  In 2018, following his more recent parole beginning in 2017, the Marshals Fugitive Task Force searched for and detained Mr. Hutchinson.  When he began supervised release in 2021, his conditions precluded him from knowingly associating with Ghost Town gang members.  He violated this condition in 2022-2023, as well as the condition prohibiting new criminal conduct.  In sum,

---

[2] *See* Oaklandside, "Oakland violence prevention efforts get boost from $6 million state grant," Aug. 2, 2022, https://oaklandside.org/2022/08/02/oakland-violence-prevention-efforts-get-boost-from-6-million-state-grant/.

1  given the recurring cycle of offense conduct, to include offenses occurring while on supervision, the

2  need to promote respect for the law is an aggravating sentencing factor.

3  **D.    History and characteristics of the defendant**

4  Mr. Hutchinson is a 38-year-old native of Oakland.  Mr. Hutchinson's history and characteristics

5  support the government's recommended sentence.  Mr. Hutchinson's conduct shows that he will join in

6  a violent robbery crew that uses gun-related violence to terrorize small businesses.  The evidence of his

7  conduct also demonstrates that Hutchinson is an active participant in the conspiracy, participating in pre-

8  robbery coordination, entering the premises to carry out the violent robbery, and working to sell the

9  stolen jewelry afterward.  The conduct in this case is similar enough to the conduct involved with his

10  prior convictions to be an aggravating factor:  assault with great bodily injury in 2006 (PSR ¶ 55),

11  assault with a firearm on person in 2010 (PSR ¶ 56), and illegal firearm possession (PSR ¶ 57).  In

12  addition, Mr. Hutchinson's history includes mitigation.  He experienced a difficult upbringing, during

13  which he experienced violence, both directly and in his environment.  During his incarceration, to his

14  credit, Mr. Hutchinson has completed a construction course that will provide him with marketable skills

15  in the labor market.  Finally, to his further credit, Mr. Hutchinson has admitted his conduct and accepted

16  responsibility for it.

17  **E.    The need to avoid unwarranted disparities in sentencing**

18  The parties met and conferred regarding the government's sentencing recommendation.  Defense

19  counsel argues that the government's recommendation should reflect the same percentage reduction

20  used in the sentencing recommendations for defendants Barnett and Jenkins, because those defendants

21  are, in counsel's view, "more culpable" since they participated in more robberies.  The government takes

22  the position that its recommendation reflects consideration of more factors than the number of robberies,

23  and the higher sentencing guidelines ranges faced by those other defendants takes into account their

24  participation in additional robberies.  The higher guidelines ranges therefore capture defense counsel's

25  concern.  Barnett and Jenkins, convicted of conspiracy plus three robberies, faced guidelines ranges of

26  188-235 and 210-240 respectively.  In addition, the government notes that in the case of Barnett and

27  Jenkins, the calculation of the guidelines at sentencing was higher at sentencing than the parties' plea

28  agreement contemplated.  The government did not increase its recommendation from the term specified

in the plea agreement, which resulted in a greater reduction on a percentage basis than the parties intended.  However, in Hutchinson's case, the guidelines as calculated in the plea agreement are accurate.  In addition, Hutchinson committed the new offense conduct while on supervised release, a factor in the government's analysis.  The government provides this context for the Court to understand that the parties' discussions and the government's position that the recommended sentence will not result in an unwarranted disparity.

## VIII.    CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court impose a sentence of 76 months of imprisonment, followed by a 36-month term of supervised release, with each of the conditions set forth in the plea agreement, including the expanded search condition.

DATED:  October 10, 2025

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Jonathan U. Lee*
_____
JONATHAN U. LEE
WENDY M. GARBERS
Assistant United States Attorneys